IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TEAM TIRES PLUS, LTD., a
Minnesota corporation,

        Plaintiff,

vs.                                                   CIVIL NO. 01-1124 JP/RLP

TIRES PLUS, INC., a New Mexico
corporation,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

    THIS MATTER having come before the Court on Defendant Tires Plus, Inc.'s *Daubert* Motion in Limine to Exclude the Testimony, Report, and Affidavit of Plaintiff's Survey Expert James H. Nelems **(Docket No. 99)** and Defendant Tires Plus, Inc.'s *Daubert* Motion in Limine to Exclude the Testimony and Reports of Plaintiff's Damages Expert Steven S. Oscher **(Docket No. 113)**, the Court having read said motions, the memoranda in support of and opposition to said motions and otherwise being fully advised, finds that the motions will be **GRANTED IN PART AND DENIED IN PART.**

    The motions before the Court are so-called *Daubert* motions. Fed.R.Evid. 702 provides:

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods,

>and (3) the witness had applied the principles and methods reliably to the facts of the case.  Fed.R.Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), the Supreme Court concluded that Rule 702 superceded the "general acceptance" standard for the admissibility of scientific evidence.  Under *Daubert*, when faced with a proffer of expert scientific testimony, a district court "must determine at the outset, whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact understand or determine a fact in issue."  *Daubert,* 509 U.S. at 592.  This has been referred to as a gate-keeping role.  *See, Macsenti v. Becker,* 237 F.3d 1223, 1230-34 (10th Cir. 2001).

The *Daubert* standard requires the Court to determine that the proffered evidence is both "reliable" and "relevant".  *See, Daubert,* 509 U.S. at 589.  Reliability is determined by analyzing the reasoning or methodology underlying the testimony and determining whether it is valid.  *Id. at 592-93.*  Relevance involves a determination as to whether the reasoning or methodology is properly applied to the facts in the case.  *Id. at 593.*  The *Daubert* standard is now applied to all expert testimony.  *See, Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999).

The Supreme Court listed four non-exclusive factors that a trial court may consider in assessing reliability.  First, whether the opinion at issue is susceptible to testing and has been subjected to such testing.  Second, whether the opinion has been subjected to peer review.  Third, whether there is a known or potential rate of error associated with the methodology used.  Finally, whether the theory has been accepted in the scientific community.

This list is not exclusive. District courts have broad discretion to consider a host of other factors. *See, Kumho Tire,* 526 U.S. at 150. A *Daubert* analysis is hugely dependent upon the particular circumstances of the case. Essentially, the district court must focus on the experts' methodology rather than the conclusions generated by the expert. See *Daubert,* 509 U.S. at 595.

## JAMES H. NELEMS SURVEY

Defendant's Motion to Exclude the Testimony of James H. Nelems maintains the surveys conducted by Nelems were not conducted in accordance with generally accepted survey principles and that the surveys are not relevant to any factual issue before the court.

The undisputed facts establish in August, 2002 that Plaintiff disclosed a report from James Nelems entitled, "Trade and Confusion Likelihood Study." There were two surveys conducted, a consumer survey and a potential dealer survey. The consumer survey was made over nine zip codes in the Albuquerque area representing 42% of the Albuquerque adult population. Twenty-six percent of the respondents to the consumer survey responded that they had heard of Defendant's Tire Plus. On the other hand, 3% of the respondents responded they were aware of a Tire Plus outside of New Mexico.

The second survey was a tire dealer survey limited to a select population of tire store sales persons, managers and owners. Sixty-eight percent of these respondents were aware of Defendant's Tire Plus. The overwhelming majority of these dealers responded that the Albuquerque Tire Plus was not related to another company outside of New Mexico.

Although Defendant severely criticizes the sampling areas included in both surveys,

there was no convincing showing that the narrowed sampling areas resulted in flawed surveys or under-sampling. Defendant's criticism of the questions used by Mr. Nelems is similarly unpersuasive. In the questions presented, there was no evidence of the use of leading questions.

The parties agree that a critical question in this case is whether the relevant population was likely confused by Defendant's use of its mark. Clearly, Mr. Nelems' survey is relevant to this issue. Defendants multiple criticisms of the Nelems' survey should be directed at a cross-examination of Mr. Nelems and, perhaps, a presentation of Mr. Sanderoff's testimony and does not warrant exclusion under *Daubert* principles.

## STEVEN S. OSCHER DAMAGE ANALYSIS

Plaintiff provided Defendant an initial report from its damages' expert, Steven S. Oscher, in August, 2002. Oscher was hired by Plaintiff to calculate the economic loss incurred by Plaintiff as a result of Defendant's use of the TIRES PLUS mark.

Oscher's report sets forth three elements of damages: (1) Defendant's profits; (2) Plaintiff's economic damages; and (3) corrective advertising. The Oscher report did not rely on Defendant's actual profit numbers, rather he relied on a published study as a benchmark for the profit analysis. Using a 3.3% operating profit percentage, Oscher extrapolated the operating profit for the period of 1994 through 2001 as $560,000.00. Economic damages were calculated to be in the range of $565,000.000 to $850,000.00. Finally, although there does not appear to be testimony that remedial advertising is needed, Oscher's report states this may be needed, without explaining what it is and how it is accomplished. No estimate for corrective advertising was given.

The damages estimate set forth in the Oscher report is troubling. It is curious that the report focuses on numbers that have nothing to do with Defendant's business. Although Plaintiff points out that Oscher did not have access to many of the actual financials from Defendant until after the first report was generated, little follow-up analysis has been provided to the Court.

Oscher's profit calculation is not reliable. It is not reliable to estimate profit for a business over a given period of time by using national averages when the actual financials are available, absent allegations of fraud or misrepresentation in the financials. No such allegations have been made in this case. Additionally, it is clear that a monetary recovery of Defendant's profits in an infringement and/or unfair competition case is limited to Plaintiff's proof of sales only. 15 U.S.C. § 1117(a). Thereafter, the burden of proof shifts to Defendant to prove costs and deductions associated with the sales data.

Oscher's estimated economic damages are similarly unreliable and speculative. Apparently, as an alternative to the damage theory that would disgorge Defendant of its profits, Plaintiff is requesting franchise fees, royalty fees, license fees and inventory mark-up charges. Assuming Plaintiff can recover Defendant's profits for the time period in issue, this approach is not necessary and is speculative. This is particularly so since Plaintiff never had any intent to enter the New Mexico market.

Lastly, Plaintiff cites the category of corrective advertising as an appropriate category of damages. Oscher is not qualified to testify as to the necessity of such an expense item. No foundation was presented to establish the reasonableness of corrective advertising as a remedy. Even if corrective advertising is appropriate, no calculation was

made to determine the cost of such advertising.  Clearly, this item of damages is speculative at best.

**IT IS THEREFORE ORDERED** that Defendant Tires Plus, Inc.'s *Daubert* Motion in Limine to Exclude the Testimony, Report, and Affidavit of Plaintiff's Survey Expert James H. Nelems is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant Tires Plus, Inc.'s *Daubert* Motion in Limine to Exclude the Testimony and Reports of Plaintiff's Damages Expert Steven S. Oscher is **GRANTED IN PART AND DENIED IN PART.**

**IT IS FURTHER ORDERED** that Plaintiff's damages expert Steven S. Oscher is barred from projecting Defendant's profit based upon the study he refers to in his report. Any evidence regarding Defendant's operating profit is limited to Plaintiff's proof of Defendant's sales only.  Costs and deductions associated with this sales data may thereafter be presented by Defendant.

**IT IS FURTHER ORDERED** that the Oscher estimated economic damages are unreliable and speculative.  Further, this testimony is irrelevant and will not be allowed at the time of trial.

**IT IS FURTHER ORDERED** that the Oscher corrective advertising evidence is speculative and irrelevant and will not be allowed at the time of trial.

**IT IS SO ORDERED.**

_____
RICHARD L. PUGLISI
United States Magistrate Judge